PRESTON COUNTY COKE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33066.   Promulgated November 5, 1931.

*R. N. Anderson, Esq.*, for the petitioner.
*J. M. Leinenkugel, Esq.*, and *T. G. Histon, Esq.*, for the respondent.

OPINION.

SMITH: 1. *Affiliation.*—The petitioner claims affiliation with the Greer Steel Company on the grounds of ownership or control of substantially all of the stock of both companies by the same interests. See section 240 (b), Revenue Act of 1918.

The majority stockholders of the petitioner, H. C. Greer and Agnes R. Greer, owned substantially all of the stock of the Greer Steel Company but the petitioner's minority stockholders, owning approximately 26 per cent of the petitioner's stock, owned no interest in the Greer Steel Company, except for the one qualifying share owned by Bierer. The petitioner's principal minority stockholders were W. L. Curry, who owned 405 shares, or 16.16 per cent; Everhart Bierer, who owned 150 shares, or 6 per cent; and Carl Springer and J. W. Abraham, who owned 50 shares, or 2 per cent each. Except for the one qualifying share owned by Bierer, none of these individuals owned any stock in the Steel Company. Only 71.89 per cent of the petitioner's stock was owned by the stockholders common to both companies. The petitioner does not contend that this constituted substantially all of the petitioner's stock. It does contend, however, that the stock of both companies was controlled by the same interests; that H. C. Greer actually controlled the stock and dominated the policies of both companies and that H. C. Greer, Agnes R. Greer, Everhart Bierer and A. W. Hawley constituted

the same interests within the meaning of the statute; and that the companies operated as a single business unit.

The respondent relies upon the more strict rule of ownership or control by the same *beneficial* interests and cites *Ice Service Co.* v. *Commissioner*, 30 Fed. (2d) 230; *Hirsch & Co.* v. *Commissioner*, 30 Fed. (2d) 645; *Conley Tin Foil Corporation*, 17 B. T. A. 65; *Empire Safe Deposit Co.*, 19 B. T. A. 1137.

The evidence leaves no doubt in our minds that H. C. Greer actually controlled all of the stock as well as the business policies of both companies. There were also intercompany transactions tending to formulate the separate companies into a single business unit. For a period of five months in 1920, at a time of labor shortage, the Steel Company transferred labor and equipment from its lime plant to the petitioner without cost. At the same time the petitioner furnished the Steel Company with a small amount of electric current. There were other intercompany transactions and working agreements of mutual benefit. The petitioner lent the Steel Company $31,000 in 1920 upon which no interest was charged.

We think that this unity of ownership and control coupled with the community of business interests which existed during the year 1920, entitled the petitioner and the Steel Company to the status of affiliated corporations in that year. See *Detour Dock Co. et al.*, 22 B. T. A. 925.

2. *Depletion.*—The petitioner contends that the deduction allowed by the respondent for depletion of its coal lands in 1920 is inadequate; that the depletion allowance should be computed upon a March 1, 1913, value of $400 per acre, whereas the respondent in his deficiency notice has determined a value of $300 per acre.

We are of the opinion that the evidence before us does not warrant any increase of the value as determined by the respondent. The extension of the Morgantown & Kingwood Railroad and the increase in demand for coal and coke; which the petitioner claims were factors in the increase in value of the coal lands, occurred prior to 1907, the year in which the petitioner acquired the property in an arm's-length transaction for less than $120 an acre. In 1907 the petitioner sold 62 acres for $200 an acre and received an offer in that year of $200 an acre for an additional 200 acres. In 1912 the Elkins Coal Company offered to purchase 60 acres at $300 an acre. There was a further lump-sum offer of $650,000 for the entire property, but in this offer there was no segregation of coal lands from the plant equipment.

H. C. Greer, the petitioner's president and principal stockholder, testified that in his opinion the coal lands had a value at March 1, 1913, of at least $400 an acre. He did not state any facts other than those discussed above in support of his valuation. Considering all

of the evidence the petitioner's contention for a value at March 1, 1913, in excess of $300 an acre as determined by the respondent is not properly supported.

3. *Expense deductions.*—In 1920 the petitioner purchased and charged to expense account various items of mine and plant equipment at an aggregate cost of $36,968.18, which it claims as a deduction of that year. The cost of each separate item and the purpose for which it was used are set forth in the above findings. The petitioner contends that the items all served to maintain the normal production of coal and coke and did not increase production, decrease the cost of production, or add to the capital value of its property. We are satisfied from the evidence that the fan, pump, steel rails, bending machine, and mining machine come within the petitioner's claim and that they are deductible as expenses of the year 1920 under the rule laid down by the courts in *Marsh Fork Coal Co.* v. *Lucas*, 42 Fed. (2d) 83; *United States* v. *Roden Coal Co.*, 39 Fed. (2d) 425; *Commissioner* v. *Brier Hill Collieries*, 50 Fed. (2d) 777. See also *West Virginia-Pittsburgh Coal Co.*, 24 B. T. A. 234.

The facts are different as to the two remaining items—the coke machine and the steam shovel. The coke machine was used exclusively in removing the coke from the ovens and the steam shovel was used in handling the finished coke after removal from the ovens. The conversion of coal into coke is not a mining process, but is a manufacturing process. The petitioner's mining operations ceased when the coal was removed from the mine and delivered at its coke plant. Since neither the coke machine nor the steam shovel was used in this process, they can not be classified as items of mine equipment and as such charged to expense account. They are clearly capital expenditures returnable to the petitioner through depreciation allowances.

4. *Invested capital.*—The respondent has conceded that petitioner's invested capital as computed in the 30-day letter was erroneously reduced by the amount of $15,386.43, representing the cost of surface lands.

5. *Invested capital.*—The petitioner contends that its invested capital should be further adjusted on account of the items of $7,542.32, representing the cost of additional coal lands acquired in 1910 and 1912, and $15,000, representing an erroneous credit to coal lands account in order to set up a royalty reserve.

The computation appearing in respondent's 30-day letter shows a cost of coal lands at acquisition of $163,007.25, with an addition of $12,939.75, making a total cost of $175,947, which is the amount shown in the deficiency notice. We do not know what the $12,939.75 adjustment represents. The petitioner's witness, H. C. Greer, testified that the petitioner paid approximately $175,000 for the original

1,500-acre tract purchased in 1907. The evidence further shows that the petitioner in 1907 sold 62 acres of its coal lands for $12,400 and in 1910 and 1912 purchased additional acreage for $7,542.32. We can not tell from the information at hand whether or not these transactions were taken into account by the respondent in his determination of the cost of the coal lands. It is not shown either that the book entries with respect to the item of $15,000, which the evidence shows was erroneously credited to coal lands account and charged to depletion reserve in 1913, in any way affects the cost of the coal lands to the petitioner, or that the respondent has not made whatever adjustment was necessary on account thereof in his determination of the cost. In these circumstances we will not disturb the Commissioner's determination that the cost of petitioner's coal lands for invested capital purposes was $175,947.

6. *Invested capital.*—The petitioner offers as an alternative contention, in the event that the deduction of the amount of $36,968.18 representing the cost of the items of equipment purchased in 1920 is denied, that its invested capital should be increased by the amount of $52,401.15, representing the cost of certain items purchased and charged to expense account during the years 1910 to 1914, inclusive. In view of our partial disallowance of the deduction claimed in issue 3, we will assume that the petitioner urges its alternative contention.

A list of the items in question showing the date of purchase and the cost of each appears in our findings above, the aggregate amount thereof being $57,149.37 instead of $52,401.15, the amount claimed in the petitioner's original and amended petitions. The evidence before us contains no further information about any of the items. We do not know for what specific purposes they were used, or whether in the process of mining coal or the process of manufacturing coke. Some of the large items such as mine rails, mine cars, and mine openings appear to be similar to those items purchased in 1920 which we have held were correctly charged to the expense account of that year. It is possible that the facts pertaining to the character of the other items of equipment and the purposes for which they were used would warrant the restoration of some of them to capital account of the prior years, but this information is not before us. The petitioner's contention is therefore denied.

7. *Depreciation.*—The petitioner offers a further alternative contention, in the case of an adverse decision in issue three, that it is entitled to the deduction in 1920 of a reasonable allowance for exhaustion, wear and tear of the equipment purchased in the prior years 1910 to 1914, inclusive, referred to above in issue 6. This contention is likewise denied. All of the items in question were charged to expense account of the prior years in conformity with

the petitioner's method of keeping its books and accounts. The evidence before us does not show that any of the items represented capital expenditures or that any adjustment of the petitioner's 1920 tax liability should be made on account thereof.

8. *Special assessment.*—The petitioner contends that, because of abnormalities affecting its capital and income, its profits tax for 1920 should be determined in accordance with the provisions of section 328 of the Revenue Act of 1918. The abnormal conditions claimed by the petitioner are that a substantial part of the value of its coal lands was excluded from its statutory invested capital; that the savings of $200 an oven on the construction of 194 coke ovens resulted in a value ascribable to these assets greatly in excess of the value at which they were carried on its books and included in its invested capital; and that the use in 1920 of the labor and equipment from the lime plant of the Steel Company for a period of five months without any offsetting expense created an abnormality affecting its income for that year.

The petitioner's claim for the right to special assessment rests principally upon the grounds that the appreciated value of its coal lands, or the excess of their 1920 value over their cost, is not reflected in its invested capital. The petitioner contends that the coal lands had a value in 1920 in excess of $1,000,000.

The statute makes no provision for the inclusion in invested capital of the appreciated value of assets used in a business, but it purposely limits invested capital to the capital actually embarked in the enterprise (section 326 of the 1918 Act). *La Belle Iron Works* v. *United States*, 256 U. S. 377.

There is no evidence before us that the increase in the value of the petitioner's coal lands was in itself abnormal or that it gave rise to any abnormalities affecting either capital or income. We have held in numerous cases that the mere statutory exclusion from invested capital of the value of assets used in a business does not entitle a taxpayer to relief under the provisions of section 328. See *Morris & Co.*, 1 B. T. A. 704, and subsequent cases. While the statute does not specifically exclude the appreciated value of tangible property, it purposely makes no provision for its inclusion in invested capital. *La Belle Iron Works* v. *United States, supra.* In most of the cases where we have allowed special assessment on account of the exclusion from invested capital of the value of assets, the assets in question were in the nature of patents, secret processes, or valuable contracts upon which the life of the business depended and which were the chief source of income. *Bates-Bowman Corporation*, 20 B. T. A. 460; *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192; *J. M. and M. S. Browning Co.*, 6 B. T. A. 914.

The petitioner relies upon *Roslyn Fuel Co.*, 16 B. T. A. 285. The facts in that case are strikingly similar to the facts in the instant case, the alleged abnormality in both instances being the result of the exclusion from invested capital of the appreciated value over cost of coal lands. Upon a careful consideration of that case we are convinced that it is wrong in principle in so far as it recognizes as an abnormality, affording grounds for special assessment, the exclusion from invested capital of the appreciated value of assets used in the business. We find no other cases where the Board has adopted this view. Certainly we can not say in the instant case that such an abnormality existed when there is no evidence whatever that the same conditions did not obtain throughout the entire coal industry. See *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566.

The evidence before us does not show to what extent the petitioner's capital or income was affected by the labor and equipment furnished to it without cost by the Greer Steel Company for a period in 1920, nor does the evidence show the value of the coal and electric current which the petitioner furnished to the Steel Company without cost during this same period. The exchange may have been equally beneficial to both companies.

The fact that the petitioner was able to save $200 an oven in the construction of 194 of its coke ovens does not indicate such an abnormality as would entitle the petitioner to special assessment relief. The extent of the resulting undercapitalization claimed is not of great significance when compared with the petitioner's total invested capital as determined by the respondent of approximately $500,000.

The petitioner is not entitled to have its profits tax computed under the provisions of section 328.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Murdock dissents.